## ISAAC BALDWIN *v.* HENRY CARLETON.

Where the accounts of an executor have been homologated, he can no longer be held responsible for payments made by him under the orders of the Court of Probates. Should the heir discover that payments have been made which were not due, his recourse, if he have any, is by an action *condictio indebiti*, against the party who has received what he was not entitled to ; and where such payments have been made to the executor for commissions alleged to have been illegally allowed, an action to recover them may be brought against him, individually, before a court of ordinary jurisdiction. The defendant is no longer executor, nor is he sued as such.

APPEAL from the Parish Court of New Orleans, *Maurian,* J.

MORPHY, J. This suit is brought to recover $3593 60 for an amount of commissions illegally charged and received by the defendant as one of the executors of the last will of the late Eliza Baldwin, the plaintiff's mother. The petition avers that the defendant and Thomas H. Maddux, his co-executor, administered on the estate of the deceased, and had an inventory made, in which was included all the property in which she was interested, and that nearly the whole of the property so inventoried belonged to the said Eliza Baldwin and to the plaintiff, having been previously the property of the late Isaac Baldwin, the plaintiff's father, who died in April, 1833 ; that the said Thomas H. Maddux and H. Carleton, on the 27th of February, 1837, rendered an account of their administration, in which they credited themselves with two and a half per cent commissions as executors, on the whole amount of the inventory made after the death of Eliza Baldwin, which inventory embraced a large amount of property not belonging to her estate ; and that thus the charge for commissions amounted to $14,374 38, whereas they were entitled only to one half of that sum, to wit, $7187 19, and that the said Carleton, in particular, was entitled only to $3593 60. It also avers that the said account was homologated, and that the said sum of $14,374 38 was received by the said Maddux and Carleton.

The petition further shows that the petitioner having since attained the age of majority, made a settlement with Thomas H. Maddux, who had also been his tutor; that he then ascertained

that the said commissions had been overpaid, and that as soon as Maddux was informed of the mistake under which he had received said double commissions, he refunded them to the plaintiff, but that the said Carleton, although amicably requested, has refused to refund the said sum of $3,593 60. The defendant pleaded the exception of *res judicata*, averring that the commissions for which this suit is brought, have been properly allowed in a court of competent jurisdiction, to wit, the Court of Probates of the parish of Orleans, in proceedings to which the legal representative of the plaintiff was a party, and by a judgment which was confirmed by the Supreme Court of the State. He made also a reconventional demand for professional services rendered to the late Eliza Baldwin. On the trial, the defendant filed a plea, " that by reason of the nature of the demand, the parish court was without jurisdiction over the same." On this plea, the suit was dismissed for want of jurisdiction ; and the plaintiff has appealed.

*Janin*, for the appellant. The petition shows that an illegal commission was charged by the executors of Baldwin in their account presented to the Court of Probates ; that the account was homologated, and the amount received by them. For the reimbursement of his share of this sum, the defendant is now sued. The petition is silent as to whether the homologation be binding on the plaintiff or not. The defendant alleges that it is. If this be so, the executors were justified in paying the amount, and cannot be made responsible therefor. If any recourse be left, it must be against the pretended creditor ; and the only question between the plaintiff and defendant must be under the plea of *res judicata*, in support of which the defendant must show that the homologation was so made as to bind the plaintiff.

The exception to the jurisdiction of the court is unfounded. The action is not against the defendant as executor, but as the individual who received the money, and he is as distinct from the executor as any other person unconnected with the administration of the estate, to whom the amount sued for might have been paid.

If the decree of homologation be not binding on the plaintiff, he may proceed against the executors, and compel them to refund what they have illegally paid. They would have recourse against the pretended creditor, whom the homologation would no more

protect than it did the executors. The plaintiff has a direct action against the creditor, who has been improperly paid. He cannot be compelled to resort to the circuitous remedy of suing both the executors and the creditor. The lower court considered the claim of the plaintiff as one against the executors. This opinion could not have been derived from the petition, which states expressly that the defendant is sued as an individual. Was it drawn from the alleged homologation of the accounts of the executor? If this homologation did not protect the executor, the plaintiff has a cumulative remedy; if it did protect him, the petitioner could have proceeded only against the individual who received the illegal payment.

Micou, for the defendant.

MORPHY, J.   In considering an exception of this kind, the facts set forth in the pleadings must be taken as true. If, as appears from the petition and answer, the accounts of the executors have been rendered and homologated, and the commissions paid to them, we can see no good reason why the parish court should be without jurisdiction in the premises. Where there has been an homologation of the account of the executors, they can no longer be made responsible for the payments they have made as such under an order of the Court of Probates. If the heir discovers that sums have been paid which were not due, his recourse, if any he has, must be by an action condictio indebiti against the creditors whom the executors have paid through error. In this instance, the creditor who is alleged to have received what was not due to him, happens to be one of the executors. We cannot see that this circumstance should place him on a different footing from other creditors, who may have received through mistake a larger sum than they were entitled to, or sums to which they had no right whatever. The defendant is no longer executor, nor is he sued as such. He detains this money as his private property, and is suable for it in the courts of ordinary jurisdiction; but whether the decree of homologation is binding on the plaintiff, so as to support the plea of res judicata, or not, is quite a different question, and one not at present before us.

It is therefore ordered that the judgment of the parish court be reversed; and that this case be remanded to be proceeded in ac-

Baldwin v. Carleton.

cording to law, the defendant and appellee paying the costs of this appeal.*

*Micou, for a re-hearing. No court can render a definitive judgment in this suit without deciding whether the inventory was correct or incorrect, and the charge of commissions legal or illegal. Can a court of ordinary jurisdiction pass upon either the one or the other? If the administration were incomplete, would the parish court have jurisdiction to decide whether the inventory was correct, and what amount of commissions should be allowed to an executor? Certainly not. A suit, to decide such questions, instituted before a court of ordinary jurisdiction, must be dismissed, and the parties referred to the tribunal specially and exclusively authorized to decide such matters   Code Prac. art. 924.

The Court of Probates, to which this exclusive jurisdiction is given, has already decided. An inventory has been filed and approved; an account has been rendered and homologated. The parish court had no jurisdiction before the homologation. How can it acquire such jurisdiction afterwards?

The court *a qua* says that the plea of *res judicata* is not now before it. The case, as presented by the plaintiff, is in such a form to render this plea, or any other, wholly superfluous. The question of *res judicata* arises on the face of the petition. The plaintiff avers that the money reclaimed by him was paid in pursuance of a judgment. Had he simply alleged that it had been illegally received, it would have been for the defendant to *plead* a judgment, if any existed. But when the plaintiff himself informs the court of the existence of a judgment, what necessity is there for the defendant to repeat the allegation in a plea?

Such a plea would be a mere suggestion. One not engaged in the suit, might, as *amicus curiæ*, make the same suggestion, and the court would consider it. On reading the petition, where the nature of the demand is brought to the attention of the court, it is the first duty of the judge to decide whether the subject is one over which the laws have given him jurisdiction. Code Prac. art. 88. If at any time before a final decree he perceives that the subject is not within his jurisdiction, the suit must be dismissed. Should he have erroneously given a judgment in such a case, it would be void. Even consent cannot give jurisdiction over cases which, *ratione materiæ*, are not within the competency of the judge. The judge is *prohibited* from entertaining the case even on the request of both parties. Code Prac. art. 92. The first element in the validity of a judgment is the competency of the court which renders it; if the court is incompetent, the judgment is absolutely void, and has no more effect than if it had never been pronounced.

The court *a qua* decided that it could not approve or disapprove the inventory of an estate administered in the Probate Court, nor regulate the amount of commissions due to an executor; and that it had no authority to reverse the decrees of the Probate Court as to the correctness of such inventory, or the amount of such commissions. Will this court remand the case, with instructions to do either the one or the other, or to obtain proof of the existence of a judgment which is alleged by the plaintiff and admitted by the defendant?

This is not an action to annul the judgment of the Court of Probates. The plaintiff, it is true, says that he was a minor at the date of the judgment, but he does not

allege that he was not legally represented in the proceedings, nor does he pray that the judgment be annulled. But if it were such an action, it would still be within the exclusive jurisdiction of the Court of Probates. Code Prac. art 608, 618. *Harty* v. *Harty*, 8 Mart. N. S. 520. *Lewis' heirs* v. *Lewis' executors*, 5 La. 393.

The object of this suit is to recover the money, *notwithstanding* the judgment under which it was paid. This cannot be done. The object of a judgment is to settle the rights of the parties. When a court has once decided, its decree is the law between the parties as to every thing embraced in the judgment. If money has been paid in conformity with a judgment, it cannot be recovered by suit until the judgment has been annulled, or reversed on appeal. Neither the court in which it was rendered, nor any other court, can inquire whether the judgment was correct, nor can they disregard it, and again decide on the same issue. A controversy, settled by a final judgment, cannot be revived. Code Prac. 539, 548.

The case of *Martin* v. *Martin*, 5 Mart. N. S. 171, was somewhat similar to the present. During the minority of the plaintiff, a partition of property in which he was interested, was made by sale. The curator of the minor purchased, on his account, a part of the property, and the partition and purchase were confirmed by a judgment of the proper court. The plaintiff, arriving at his majority, sued the heirs of his curator, disclaiming the purchases, alleging that they were contrary to law, and demanding in money the amount invested in the property.

The court says : "If that prayer was acceded to, these proceedings, in relation to the rights of the minor, would present very singular features. There would be a judgment of a court of competent jurisdiction, deciding that he was the owner of the property. There would be another, which, leaving that judgment unreversed, would declare that he is entitled to the price of it. Now this cannot be, and unless we shall find, on further inquiry, that the first judgment is *absolutely, not relatively, null and void*, we are perfectly clear the plaintiff cannot recover in this action."

And again in the case of *Broussard* v. *Bernard*, 7 La. 223, the court, Bullard, J say, "this court has held that a judgment, rendered by a court of competent jurisdiction, between parties legally before it, cannot be questioned indirectly and collaterally ; and, in a recent case, that minors properly represented, are equally bound."

The question before the court is not whether the ordinary tribunals can entertain suits to recover money illegally paid by an executor. The true questions presented by the petition itself are, can a court of ordinary jurisdiction inquire into the correctness of an inventory ? Can it fix the amount of an executor's commissions ? Can it revise or reverse the judgment of the Probate Court ?

Surely to ask these questions, is to ensure an answer fatal to the plaintiff's demand. His demand cannot be granted, nay, it cannot be heard, without a subversion of fundamental principles of the law, and a flagrant disregard of a reasonable, settled, and necessary system of adjudications.

*Re-hearing refused.*